## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ANDREW GERSHMAN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| CAESARS ENTERTAINMENT CORPORATION, ANTHONY RODIO, JAMES HUNT, THOMAS BENNINGER, JULIANA CHUGG, DENISE CLARK, KEITH COZZA, JOHN DIONNE, DON KORNSTEIN, COURTNEY MATHER, JAMES NELSON, RICHARD SCHIFTER, COLT MERGER SUB, INC., and ELDORADO RESORTS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) |

Civil Action No. _____

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMAND**

Plaintiff Andrew Gershman ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Caesars Entertainment Corporation ("Caesars" or the "Company") against Caesars' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Eldorado Resorts, Inc. through its wholly-owned subsidiary Colt Merger Sub, Inc. (collectively "Eldorado").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with

the United States Securities and Exchange Commission ("SEC") on September 3, 2019. The S-4 recommends that Caesars stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Caesars is acquired by Eldorado. The Proposed Transaction was first disclosed on June 24, 2019, when Caesars and Eldorado announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Eldorado will acquire all of the outstanding shares of common stock of Caesars for $8.40 and 0.0899 shares of Eldorado common stock per share of Caesars (the "Merger Consideration"). The deal is valued at approximately $17.3 billion and is expected to close in the first half of 2020.

3.     Caesars is one of the best-known companies in the gaming industry. Its hotels and casinos are popular destinations, bringing in $7.3 billion in revenues in 2018, a 73% increase from $4.2 billion in 2017. Despite encouraging growth after emerging from bankruptcy, the Board acquiesced to pressure from some stockholders to sell the Company. In doing so, the Board failed to obtain a proper valuation for Caesars and tied stockholders to a company where some of its executives and directors have been issued subpoenas in an SEC investigation.

4.     Furthermore, the S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Caesars' management, and the financial analyses conducted by PJT Partners LP ("PJT Partners"), Caesars' financial advisor.

5.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Caesars' stockholders, unless and until the material information discussed below

is included in any such amendment or otherwise disseminated to Caesars' stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

6.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Caesars.

7.      Defendant Caesars is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at One Caesars Palace Drive, Las Vegas, Nevada 89109. Caesars common stock trades on NASDAQ under the ticker symbol "CZR."

8.      Defendant Anthony Rodio ("Rodio") has been CEO and a director of the Company since May 2019.

9.      Defendant James Hunt ("Hunt") has been a director of the Company since 2017 and serves as Chairman of the Board.

10.      Defendant Thomas Benninger ("Benninger") has been a director of the Company since 2017.

11.      Defendant Juliana Chugg ("Chugg") has been a director of the Company since December 2018.

12.      Defendant Denise Clark ("Clark") has been a director of the Company since October 2018.

13.      Defendant Keith Cozza ("Cozza") has been a director of the Company since March 2019.

14.      Defendant John Dionne ("Dionne") has been a director of the Company since 2017.

15.     Defendant Don Kornstein ("Kornstein") in has been a director of the Company since 2017.

16.     Defendant Courtney Mather ("Mather") has been a director of the Company since March 2019.

17.     Defendant James Nelson ("Nelson") has been a director of the Company since March 2019.

18.     Defendant Richard Schifter ("Schifter") has been a director of the Company since 2017.

19.     Defendants Rodio, Hunt, Benninger, Chugg, Clark, Cozza, Dionne, Kornstein, Mather, Nelson and Schifter are collectively referred to herein as the "Board."

20.     Defendant Eldorado Resorts, Inc. is a Nevada corporation with its principal executive offices located at 100 West Liberty Street, Suite 1150, Reno Nevada 89501. Eldorado common stock trades on NASDAQ under the ticker symbol "ERI."

21.     Defendant Colt Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Eldorado.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

23.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

24.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue

took place and had an effect in this District; and (ii) Caesars is incorporated in this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action on his own behalf and as a class action on behalf of all

owners of Caesars common stock and their successors in interest and/or their transferees, except

Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the

Defendants (the "Class").

26.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As

of June 24, 2019, Caesars had approximately 682.1 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the

following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange

Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of

the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer

irreparable injury were Defendants to file an amendment to the S-4

with the SEC that does not contain the material information

referenced above and the Proposed Transaction is consummated as

presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)    Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)    Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)    Plaintiff's claims are typical of those of the other members of the Class.

(e)    Plaintiff has no interests that are adverse to the Class.

(f)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)    Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A.  The Board Bows to Activist Stockholders and Agrees to Sell Company Despite Undervaluation

27.    Caesars operates hotels, restaurants and casinos in Las Vegas, Atlantic City and other locations across the United States. The Company brought in $7.3 billion in revenues in 2018,

a 73% increase from $4.2 billion in 2017. Caesars also recognized net income of $303 million in 2018, compared to a net loss of $368 million in 2017. The net loss was attributable to expenses from a bankruptcy by one of Caesars' subsidiaries. That company emerged from bankruptcy in October 2017.

28.     Less than a year later, in August and September 2018, activist Caesars stockholders including hedge funds and financial sponsors contacted the Company to express their disappointment in Caesars' management and the direction the Company was taking. At the same time, Caesars stockholders contacted the CEO of Eldorado to convince Eldorado to pursue a combination with Caesars. While Eldorado was interested in a transaction, at that time Caesars was not.

29.     In February 2019, Carl Icahn ("Icahn") informed Defendant Hunt that he and his affiliates had acquired a significant amount of Caesars' stock and would seek representation on the Board. Icahn also indicated that he wanted Caesars to consider strategic alternatives for the Company. Two weeks later, on February 28, 2019, the Board entered into an agreement with Icahn, agreeing to name three of Icahn's nominees to the Board and seating two of those nominees on the Strategy and Finance Committee.

30.     Less than four months later, on June 24, 2019, the Board approved the Proposed Transaction.

31.     While the process leading to the sale purports to comply with the Board's fiduciary duties, it is clear that the Board had agreed to a sale of the Company to Eldorado once it entered into the agreement with Icahn. For example, that very same day a Board member directed Caesars' legal advisor to send a non-disclosure agreement to Eldorado, despite the Company expressing that it had no interest in a transaction with Eldorado just three months earlier.

7

32.    Even though there were two other bidders that made competitive offers for Caesars, the Board's Caesars Transaction Committee considered any Eldorado offer as superior. At a meeting on April 30, 2019, the Caesars Transaction Committee described the offers from Company C and Company D as having "lower bid price[s]." As of that time, Eldorado had offered $12.00 per share in cash and stock, Company C offered between $11.50 and $12.00 per share in cash and stock, and Company D had offered $12.00 per share.

33.    But the Board's preference of Eldorado is most clearly evidenced by the Company's reaction to learning that four executives and directors of Eldorado had received subpoenas from the SEC. The SEC was investigating trading in the stock of another publicly-traded company, of which an Eldorado board member was a director and the three other subpoena recipients had traded in the stock. The subpoenas had been received in May 2019; it appears that Caesars learned of it between June 8 and June 24, 2019, after entering into an exclusivity agreement with Eldorado. The Company's response was to agree to changes in the post-closing company's board composition should any of the subpoena recipients be unable to serve as a director. But even that was limited to the circumstance that a government agency determined that the director was not suitable to serve or could not serve as a director. There is no indication that the Board considered not moving forward with the Proposed Transaction, or negotiated for a change in other terms to make the Merger Agreement more favorable to Caesars' stockholders. This is telling, given that Caesars agreed to those executives managing the post-closing company (despite lack of experience managing a gaming company of Caesars' size) and that the Board specifically noted the importance of the subpoenaed executives to the success of the Proposed Transaction. Now, the Caesars stockholders will hold shares in a company whose executives may be implicated in criminal activity.

34.     The Board's decision to sell the Company to Eldorado was made in response to Icahn and other activist stockholders, and this is borne out by the financial analyses performed by PJT Partners. Almost every financial analysis concluded with an implied price per share of Caesars at or below the Merger Consideration. Only the "Alternative Case" in the *Discounted Equity Value Analysis* implied a per share price over $13.00, as did the "Base Case" and "Alternative Case" in the *Discounted Cash Flow Analysis*. This contrasts starkly with the financial analyses of Eldorado's financial advisor, where every analysis found implied per share prices higher than the Merger Consideration, and the *Discounted Cash Flow Analysis* found an implied per share equity value of Caesars as high as $21.50. PJT Partners appears to have artificially lowered Caesars' value by choosing a lower benefit figure and applying generally reduced multiples relative to its selected range for EBITDA multiples in its *Discounted Equity Value Analysis* and its *Discounted Cash Flow Analysis*.

**B.  The Preclusive Deal Protection Devices**

35.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

36.     By way of example, Section 5.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 5.3(a) further demands that the Company cease all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

37.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Eldorado. For example, pursuant to Section 5.3(d) of the Merger Agreement, the Company must notify Eldorado of any offer, indication of interest, or

request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, Section 5.3(e) requires that the Board grant Eldorado four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. Eldorado is able to match the unsolicited offer because, pursuant to Sections 5.3(d) and (e) of the Merger Agreement, the Company must provide Eldorado with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

38.     In other words, the Merger Agreement gives Eldorado access to any rival bidder's information and allows Eldorado a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Caesars, because the Merger Agreement unfairly assures that any "auction" will favor Eldorado and allow Eldorado to piggy-back upon the due diligence of the foreclosed second bidder.

39.     In addition, pursuant to Section 7.3(a) of the Merger Agreement, Caesars must pay Eldorado a termination fee of $418.4 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

40.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any

likely alternate bidder from providing the needed market check of Eldorado's inadequate offer price.

### C. The Materially Incomplete and Misleading S-4

41.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Caesars' stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

42.     On September 3, 2019, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Caesars stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

43.     The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of PJT Partners's fairness opinion, PJT Partners reviewed "certain internal financial analyses, estimates and forecasts relating to Caesars, including projections for fiscal years 2019 through 2023 that were prepared and approved by the management of Caesars." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that Caesars' management provided to the Board and PJT Partners.

44.     Notably, Defendants failed to disclose the timing and amount of: the cash flows to Caesar expected to result from the exercise by VICI of call options; the expected net proceeds of the sale of properties to VICI; stock-based compensation expense; the Twin River sale (which is

included in Eldorado's forecast for Eldorado) and Caesars; and asset sales (which are excluded in Elorado's forecast for Caesars). The S-4 also fails to explain and quantify the last sentence of the first full paragraph on page 168 of the S-4, including: Caesars including sales proceeds should have increased, not decreased, the indicated EBITDA; paying a term loan should have no effect on EBITDA, since EBITDA is an unlevered financial measure; and the "other adjustments." This omitted information is necessary for Caesars stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning PJT Partners' Financial Analyses*

45.     With respect to the *Discounted Equity Value Analysis*, the S-4 fails to disclose the basis for the selected range of terminal values. The S-4 also fails to disclose the basis for the *Discounted Equity Value Analysis* using terminal multiples based on EBITDA less the expense of stock-based compensation, which was not analyzed in the *Selected Precedent Transaction* analysis. Furthermore, the S-4 fails to disclose the basis for failing to examine public comps.

46.     The S-4 fails to disclose the value of Caesars' interest in the Baltimore Joint Venture.

47.     It appears that PJT Partners' analyses, specifically the *Discounted Equity Value Analysis* and the *Discounted Cash Flow Analysis*, artificially lowered Caesars' value. This is evidenced by PJT Partners' selection of a lower benefit figure (EBITDA less stock-based compensation expense) and applied generally reduced multiples (8.25x to 9.25x) relative to the selected range for EBITDA multiples (8x to 10x). The S-4 fails to disclose the basis for selecting the lower benefit figure and reduced multiples.

48.     Finally, the S-4 fails to disclose the basis for PJT Partners' failing to perform any analysis of Eldorado, given its stock constitutes more than 25% of the consideration being offered.

The S-4 suggests that PJT Partners used Eldorado's 2020 EBITDA projection in its analysis, but the S-4 does not make clear whether this was, in fact, used.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

49.     The S-4 also fails to disclose material information concerning the sales process. For example, the S-4 notes that the Board retained a financial advisor to assist it with communicating with stockholders, but there is no indication of the identity of that financial advisor. The S-4 further fails to disclose whether that financial advisor provided any advice or work on the sales process. The S-4 fails to disclose whether there were any relationships or potential conflicts of interest between that financial advisor and PJT Partners or the Company. And the S-4 fails to disclose when the Board agreed to retain PJT Partners to assist it in considering strategic alternatives.

50.     The Board experienced an influx of communications from stockholders in September and October 2018, complaining to the Board about Caesars' management and direction. The S-4 disclosed that a group of Caesars' stockholders holding 45% of Caesars stock approached Eldorado to urge a strategic transaction between Eldorado and Caesars. The S-4 does not disclose whether Icahn was a part of that group, who the stockholders were that approached Eldorado, how many conversations were held between Eldorado and the stockholders, the timing of all conversations between Eldorado and Caesars' stockholders, or whether the stockholders contacted other potential acquirers.

51.     After news articles concerning the Proposed Transaction were published on June 6, 2019, members of the Board received phone calls from Caesars' stockholders urging the Board to sell the Company. The S-4 does not disclose whether these stockholders were the same stockholders who had communicated their displeasure with Caesars' direction in September and

October 2018, or whether they were the same stockholders who had contacted Eldorado to push a transaction with Caesars.

52.     At a meeting with representatives of Golden Nugget, LLC on October 26, 2018, certain members of the Board were in attendance. The S-4 does disclose which members of the Board attended that meeting.

53.     Caesars did receive various indications of interest throughout the sales process. For example, a financial sponsor indicated interest in investing $1 billion in Caesars' equity. The S-4 does not disclose when the indication of interest was made or whether the Board attempted to negotiate a different transaction with the financial sponsor.

54.     The S-4 notes that a member of the Board's Strategy and Finance Committee had been contacted by Eldorado in February 2019 about Eldorado's interest in a transaction with Caesars. That same member directed Caesars' legal advisor to send a draft non-disclosure agreement to Eldorado on February 28, 2019. The S-4 does not disclose the identity of this Board member, or the certain members of the Board who discussed Eldorado's interest with that member of the Strategy and Finance Committee.

55.     Similarly, a member of the Board attended an in-person due diligence session with representatives of Eldorado on March 20, 2019. The S-4 does not disclose the identity of that Board member.

56.     The Board discussed projections and business plans with Caesars' management numerous times throughout the sales process. Yet the S-4 does not disclose these projections. This includes the projections discussed at the Board meeting on November 19, 2018, the projections approved at the December 6, 2018 Board meeting, the January 2019 projections discussed at the March 28, 2019 Caesars Transaction Committee meeting, the projections presented at the April

22, 2019 Caesars Transaction Committee meeting, and the projections approved for PJT Partners'
preliminary valuation work at the April 24, 2019 Caesars Transaction Committee meeting.

57.     Caesars entered into non-disclosure agreements with certain parties throughout the
sales process, including Company B, Company C, Company D, VICI and Financing Source A.
But the S-4 fails to state whether those agreements contain "don't ask, don't waive" terms in the
standstill provisions that are presently precluding those parties from making a topping bid for the
Company. The disclosure of the terms of any standstill provisions is crucial to Caesars'
stockholders being fully informed of whether their fiduciaries have put in place restrictive devices
to foreclose a topping bid for the Company. This is important as Section 5.3(b) of the Merger
Agreement prohibits the Board from waiving or modifying any previously executed standstill
agreement. Whether the Board agreed to that provision knowing that the non-disclosure
agreements with Company B, Company C, Company D, VICI and Financing Source A contained
such a "don't ask, don't waive" agreement must be disclosed to Caesars stockholders before they
decide on voting for or against the Proposed Transaction.

58.     PJT Partners prepared numerous preliminary financial analyses and valuations for
the Caesars Transaction Committee and the Board, yet the S-4 does not disclose these analyses or
valuations. This includes: PJT Partners' preliminary views on Caesars' standalone valuation
presented at the April 25, 2019 Caesars Transaction Committee meeting; the "illustrative package
value" presented to the Caesars Transaction Committee on April 25, 2019; the preliminary views
on Caesars' standalone valuation presented to the Board on May 3, 2019; the preliminary views
on ERI's standalone valuation and more refined views on the proposed illustrative transaction
package value presented to the Caesars Transaction Committee on May 16, 2019; the initial views
on Company C's standalone value and the illustrative transaction package value based on the joint

acquisition proposal from Company C and Company D presented to the Board on May 20, 2019; and the financial analyses of the Proposed Transaction presented to the Board on June 21, 2019.

59.     The S-4 notes that Eldorado informed representatives of Caesars that four executives and directors of Eldorado had received subpoenas from the SEC in May 2019 concerning an investigation of trading in the securities of another publicly-traded company. One of the directors of Eldorado had served as a director for that publicly-traded company, and the three executives had traded in that company's stock. The S-4 notes that the Eldorado executives and directors had not been notified of any allegation of wrongdoing. The S-4 does not disclose, however, when exactly Caesars was informed of the subpoenas, whether Caesars performed any due diligence into the matter after being informed of the subpoenas, or any discussions by the Board about the subpoenas. Indeed, the S-4 does not disclose whether the Board was informed of the subpoenas before entering into the Merger Agreement.

60.     Furthermore, the S-4 notes that the Board considered risks and uncertainties when agreeing to the Proposed Transaction, including that three of the Eldorado executives who received subpoenas from the SEC are important "to effectively integrate Caesars into Eldorado and realize the anticipated benefits of the merger." The same executives have not previously managed a gaming company the size of Caesars. The Board still approved the Merger Agreement, which only deals with the Eldorado executives' involvement in an SEC investigation by stating in Section 5.17 that if a governmental agency determines or is likely to determine that they are not suitable or may not serve as a director, then the number of directors from Eldorado on the post-closing board of directors shall decrease. The S-4 does not disclose if the Board discussed other consequences or ramifications to face the Eldorado executives or directors should they be accused of wrongdoing,

or how accusations of wrongdoing by the Eldorado executives or directors would impact the post-closing company.

61.     The S-4 notes that there were communications between Caesars and 10 prospective bidders. However, the S-4 also notes that 10 parties were contacted in addition to Eldorado and Company B, and a number of those parties were financing sources, not bidders. And the S-4 also notes that there were other potential bidders that contacted Caesars, including Golden Nugget and Company A. The S-4 does not disclose the total number of parties with which Caesars communicated concerning a potential strategic transaction, or the results of those communications.

62.     PJT Partners notes that it reviewed "certain internal financial analyses, estimates and forecasts relating to Caesars" as part of its work preparing its fairness opinion. However, the S-4 does not disclose which financial estimates constituted the forecasts, or whether the forecasts were updated after the April 24, 2019 Caesars Transaction Committee meeting.

63.     The financial arrangements between PJT Partners and Caesars present a potential conflict of interest. Caesars agreed to pay $3 million to PJT Partners upon delivery of the fairness opinion, and an additional $21.5 million when the Proposed Transaction closes. And PJT Partners may receive a "discretionary fee" upon closing of the Proposed Transaction. The S-4 does not disclose if PJT Partners agreed to the discretionary fee when it agreed to be retained by Caesars, or if there was any understanding of the amount of the discretionary fee. Additionally, the S-4 fails to disclose the amount of compensation PJT Partners received for its services to Caesars in the two year period prior to rendering its fairness opinion on the Proposed Transaction.

64.     The financial advisor for Eldorado stated in its fairness opinion that it reviewed projections relating to Caesars' business, as provided by Eldorado's management. It also stated that the projections provided to Eldorado's financial advisor were prepared by Eldorado or

Caesars. Yet the S-4 does not disclose whether Caesars provided its projections to Eldorado or any other party during the sales process.

65.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Caesars stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

66.     In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

67.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

68.     Further, the S-4 indicates that on June 23, 2019, PJT Partners reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated June 24, 2019, to the effect that the Merger Consideration was fair, from a financial point of view, to Caesars' stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning PJT Partners's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

69.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     Defendants have filed the S-4 with the SEC with the intention of soliciting Caesars stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

72.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Caesars, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

73.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

74.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Caesars shares and the financial analyses performed by PJT Partners in support of its fairness opinion; and (iii) the sales process.

75.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that PJT Partners reviewed and discussed its financial analyses with the Board during various meetings including on June 21, 2019, and further states that the Board relied upon PJT Partners' financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

76.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

77.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

78.     The Individual Defendants acted as controlling persons of Caesars within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Caesars and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

79.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

81.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants

reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

82. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Caesars stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

C. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

D.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 12, 2019

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
        Brian D. Long (#4347)
**OF COUNSEL:**                     Gina M. Serra (#5387)
                                    300 Delaware Avenue, Suite 1220
**ROWLEY LAW PLLC**                 Wilmington, DE 19801
Shane T. Rowley                     Telephone: (302) 295-5310
Danielle Rowland Lindahl            Facsimile: (302) 654-7530
50 Main Street, Suite 1000          Email: bdl@rl-legal.com
White Plains, NY 10606              Email: gms@rl-legal.com
Telephone: (914) 400-1920
Facsimile: (914) 301-3514           *Attorneys for Plaintiff*